# Huey, *et al. v.* Waldrop, *et al.*

## *Application for Mandamus.*

1. *Act to prevent stock from running at large in cities; passage of ordinances in accordance therewith compelled by mandamus.*— The Act approved October 1st, 1903, entitled "An Act to prevent Stock from running at large in Cities and Towns of 5000 Inhabitants or more," specifically imposes an imperative duty upon the governing bodies of all cities in the State of 5000 inhabitants or more, to adopt such ordinances and laws as shall be necessary to prevent the running at large, within

[Huey, *et al.* v. Waldrop *et al.*]

the corporate limits of all the stock and cattle named in the first section thereof, and upon the governing body of any of such municipalities refusing to adopt ordinances as so required, such governing body can be compelled thereto by mandamus; and the fact that a governing body of one of such towns has adopted the required ordinances in reference to some of the animals named therein, constitutes no reason why it cannot be compelled to adopt similar ordinances in reference to other animals named in said statute.

APPEAL from the City Court of Bessemer.
Heard before the Hon. B. C. JONES.

The appellees, J. R. Waldrop and others, being qualified electors, citizens and tax-payers of the city of Bessemer, filed the petition in this case, addressed to Hon. B. C. Jones, Judge of the City Court of Bessemer, in which it was averred that Thomas T. Huey was the regularly elected and acting mayor of the city of Bessemer, and the other named appellants were the regularly elected and acting aldermen of the city of Bessemer, and that said Huey and the other named persons constituted the board of mayor and aldermen of the city of Bessemer, which was the governing and legislative body of said city; that Bessemer was a duly incorporated city in the State of Alabama, of more than 5000 inhabitants; that there were no ordinances and laws of the city of Bessemer to prevent cows from running at large within the corporate limits of said city, and no ordinances or laws providing for the impounding of cows that might be running at large within the corporate limits of said city, or for the collection of penalties therefor; that prior to the filing of the petition, and after Oct. 1st, 1903, the petitioners had presented a petition to the board of mayor and aldermen of the city of Bessemer at a regular meeting in which they prayed said body to pass ordinances and laws to prevent cows from running at large within the corporate limits of said city, to provide for taking up and impounding cows so found to be running at large, and to fix, prescribe and provide for the collection of penalties and impounding fees for cows that might be found running at large within the corporate limits of said city, and by the passage of said

ordinances thereby obey the mandates of the act of the legislature, approved October 1st, 1903, entitled "An Act to prevent stock from running at large in cities and towns of 5,000 inhabitants or more; that said mayor and aldermen of the city of Bessemer declined and refused to pass ordinances or laws as prayed for, and have not passed such laws and ordinances; that prior to the filing of the petition, the said mayor and aldermen of the city of Bessemer had passed ordinances to carry into effect said act of the legislature as to the running at large of any of the animals named therein except cows.

The prayer of the petition was that a rule *nisi* be issued, directed to said Huey as mayor, and the other respondents as aldermen constituting the board of mayor and aldermen of the city of Bessemer, requiring them to appear and show cause why mandamus should not be issued against them as the board of the mayor and aldermen, requiring them as such board to pass the necessary ordinances and laws to prevent cows from running at large within the corporate limits of the city of Bessemer, in compliance with the provisions of said act of the legislature, and that upon the final hearing of said cause a peremptory writ of mandamus be issued to said board and aldermen commanding them to pass and adopt such ordinances and laws as are necessary to prevent cows from running at large within the corporate limits of the city of Bessemer, in accordance with the provisions of said act of the legislature.

To this petition the respondents demurred upon the following grounds: 1. Because the act of the legislature of Alabama, approved October 1, 1903, is unconstitutional, and not capable of enforcement, in that it requires legislative action on the part of the board of mayor and aldermen of Bessemer, the matter required to be legislated upon being vague and indefinite.

2. Because the requirements of said board of mayor and aldermen sought to be enforced by the petition exacts an operation of the legislative mind, and the court has no power to enforce it.

[Huey, *et al.* v. Waldrop *et al.*]

3. Because the court is without power to compel the agreement of the several aldermen as to the particular provisions to be embraced in the proposed ordinance, and without such agreement, said proposed ordinance is impossible of enactment.

4. The action of the board in its refusal to enact ordinance is not subject to review or control by this court, because if said petition is granted by the court the action of the court would be violative of Article 3 of the Constitution of the State of Alabama.

This demurrer was overruled and the respondents declining to plead further, judgment was rendered, granting the relief prayed for, and a writ of *mandamus* was issued in accordance with the prayer of the petition. From this judgment the respondents appeal and assign as error the overruling of the demurrers to the petition and the awarding of the writ of *mandamus*.

L. D. GODFREY, for appellants.—The petition seeks to compel the performance of an act which is legislative in its character and is not ministerial—the matter required to be legislated upon being vague and indefinite. *Mandamus* will not lie to compel the performance of a legislative act, the same being judicial, or quasi-judicial.—*Mobile Mutual Insurance Company v. Cleveland,* 76 Ala. 321; *Ex parte Harris,* 52 Ala. 87. *Mandamus* of court must be tried on specific things, or else, on failure, there is no contempt of court.—*State v. M. & M. Ry. Co.,* 59 Ala. 321.

HARALSON, J.—By an act approved October 1, 1903, (Acts, 1903, p. 365), entitled an "Act to prevent stock from running at large in cities and towns of five thousand inhabitants or more," it was provided, "that from and after the passage of this act it shall be unlawful to permit any horse, mule, jack, jenny, cow, hog, sheep, or goat to run at large in any city or town of this State of five thousand inhabitants or more."

2. "The governing bodies of all such cities or towns are hereby authorized and empowered, and required to adopt all such ordinances and laws as shall be necessary to prevent the running at large within these limits of

all the stock or cattle named in the next preceding section and to take up and impound all such stock or cattle found so running at large, and to fix, prescribe and provide for the collection of penalties and impounding fees for all such cattle or stock so taken up and impounded."

The statute is a general law, applicable to the whole state. It is not questioned, nor can it be, that the legislature was competent to pass this law, and impose its enforcement as a duty upon the municipal governments. After the passage of the act, it became and was unlawful for any person owning any of the animals mentioned in the first section, including cows, to allow such animals to run at large in any city or town of the state, having five thousand inhabitants or more.

The governing bodies of all such municipalities are not only authorized and empowered, but are "required,"—which in legislative language is equivalent to commanded—to adopt all such ordinances and laws as shall be necessary to prevent the running at large within such cities or towns, of the stock or cattle named in the act. There is no discretion left with those governing bodies as to the passage of such ordinances. They are required, commanded to do so, and without a violation of municipal duty, they cannot forego the discharge of this obligation. So far as they are concerned, the duty is entirely ministerial, which they may be compelled to perform. "It may be stated as a general rule, that when a statute of the city charter imposes on the council a mandatory duty, as to the performance of which they have no discretion, *mandamus* will lie to compel its performance."—19 Am. & Eng. Ency. Law, (2d ed.) 864-867.

"It may be affirmed as a general rule, sanctioned by the best authorities, that when a plain and imperative duty is specifically imposed by law upon the officers of a municipal corporation, so that in its performance they act merely in a ministerial capacity, without being called upon to exercise their own judgment as to whether the duty shall or shall not be performed, *mandamus* is the only adequate remedy to set them in motion, and the writ is freely granted in such cases, the

ordinary remedies at law being unavailing."—High on
Ex. Remedies, § 324.

It is shown that the mayor and aldermen had passed
ordinances to carry into effect said statute as to the
running at large of any of the animals named therein,
except cows, and they refused to pass any ordinance to
prevent their running at large, although formally peti-
tioned by the complainants in this case to do so.

As for anything brought to light by defendant by de-
murrer to the petition in response to the rule *nisi*, they
have not shown any legal excuse for their failure to
obey the mandates of the legislation. There was no
error in the judgment of the lower court awarding the
*mandamus.*—Authorities, *supra.*

Affirmed.