CARROLL, DONALD K., J.
One of the defendants in an action for declaratory relief has appealed from an adverse final judgment on the pleadings entered by the Circuit Court for Okaloosa County.
The basic question presented for our determination in this appeal is whether, under the allegations of the parties’ pleadings and the applicable statutory provisions, the *296 defendant-appellant, the County Commission of Okaloosa County, is required to pay the plaintiff, the county tax assessor, “the commissions upon the amount of all real and tangible personal property taxes assessed on the non-voted school millage for the entire year 1970 as determined by the 1970 tax assessment roll.”
This controversy arose because of the enactment by the 1970 Florida Legislature of Chapter 70-246, Laws of Florida, Section 1 of which chapter provides in pertinent part that Section 193.65, Florida Statutes, F.S.A. is amended to read:
“(1) The assessors of taxes of the several counties of the state shall be entitled to receive, upon the amount of all real and tangible personal property taxes assessed, excluding errors, the following commissions, to wit: For purpose of this section the commissions on the nonvoted school millage shall be paid by the county commissioners.”
The emphasized words in this quoted provision mark the words that are added to Section 193.65 by the said 1970 amendment with regard to tax assessors’ commissions on the non-voted school millage. Section 2 of the said chapter provides: “This act shall take effect July 1, 1970.”
In his complaint the plaintiff, Rhett Cad-enhead, Tax Assessor of Okaloosa County, alleges that pursuant to Section 193.65(4), Florida Statutes 1967, F.S.A., the defendant county was responsible for the commissions for assessing only the county taxes and the defendant school board was responsible for paying the plaintiff commissions for assessing the taxes for its non-voted school millage for its district; that House Bill 4030 (Chapter 70-246) became effective on July 1, 1970, amending the mentioned statute to provide that the commissions on all non-voted school millage should be paid by the county commission; that a dispute has arisen as to which defendant is responsible for the payment of the commissions which will be due to the plaintiff when the 1970 tax roll is approved by the Board of Adjustment and the millage rates are set by the respective defendants for the period beginning on January 1, 1970, and ending on June 30, 1970.
To the foregoing complaint the defendant school board filed its answer, alleging, among other things, that its obligation to pay commissions on non-voted school millage to the plaintiff and the amounts to be paid “did not arise, by operation of law, until after July 1st of each year, including the year 1970.” The answer further alleges that, by the passage of Chapter 70-246, which became effective on July 1, 1970, the Legislature intended that the defendant school board, and all school boards similarly situated in Florida, “would be relieved of the financial obligation to pay any such commissions for the entire year 1970, inasmuch as no such commissions were due nor payable (nor even determined) until after the effective date of said Chapter 70-246.
The defendant Okaloosa County also filed its answer to the above complaint, alleging, among other things, that there was never any intent of the Legislature, either through Chapter 70-246 or other legislation, to relieve the defendant school board of paying to the plaintiff commissions for assessing the taxes for its non-voted school millage for its school district for the period beginning January 1, 1970, and ending June 30, 1970.
Thus, the sole issue drawn by the parties’ pleadings in this declaratory judgment action revolves about the intention of the Legislature in enacting Chapter 70-246— whether the Legislature intended that the county or county school board pay to the tax assessor the commissions on the non-voted school millage for the year 1970. Statutory construction is rarely an easy judicial task — especially when the Legislature did not include in such enactment language specifically covering the problem before the court.
*297 No principle is more deeply imbedded in our jurisprudence than that judges interpret, but do not make, law. In that spirit, we have examined the statutory and constitutional provisions pertinent to the problem before us and have reached the conclusion that the Circuit Court erred in entering the final judgment appealed from, our holding being based upon the following reasoning:
Prior to the adoption of the 1968 Florida Constitution, the statute required that tax assessors’ commissions on taxes assessed for non-voted school millage be paid by the Board of County Commissioners out of county funds on the theory that this was a county tax.
The 1968 Constitution provides that each county shall be a school district. Under this provision all taxes assessed for non-voted school millage would be considered district taxes as distinguished from county taxes, and the tax assessors’ commissions would have to be paid out of the money allocated to the county school board on taxes realized from non-voted school millage. Since the constitutional amendment became effective on January 7, 1969, its provisions were not applicable to the 1969 taxes. Soon after the new constitution was adopted, it was realized that, by making each county a school district, a substantial portion of taxes levied for school purposes by non-voted millage would have to be liable for payment of that portion of the tax assessors’ commissions. In order to rectify this situation, and place the law back where it was prior to the effective date of the 1968 Constitution, the Legislature met in 1970 and enacted Chapter 70-246, which specifically provides that the commissions to be paid tax assessors on non-voted school millage shall be paid by the county commissioners from county funds.
Had it been the intent of the Legislature to require that the tax assessors’ commissions on non-voted school millage be paid by the county for all taxes assessed and collected during the year 1970, the act would have so provided and the question now before us would never have arisen. This the Legislature failed or refused to do. Conversely, had it been the intent of the Legislature that the tax assessors’ commissions on non-voted school millage for all taxes assessed during the year 1970 be paid by the Board of Public Instruction of each county, it could have accomplished this by merely making the effective date of the act December 31, 1970. This the Legislature failed or refused to do.
The act in question fixed the effective date thereof to be July 1, 1970. The question before us is why the effective date was fixed at the mid-point of the calendar year, and the legal effect such effective date has on the payment of tax assessors’ commissions on non-voted school millage for that year.
Section 192.101, Florida Statutes, F.S.A., provides that tax assessors, upon their own requisition, shall be paid by the county commissioners an advance on their annual commissions in an amount equal to one-twelfth of four-fifths of the total amount of commissions received during the preceding year. The tax assessors are privileged to make such demands each month during the calendar year, and all sums paid to them shall be credited against their total commissions computed at the end of the year after they have certified the tax rolls for collection purposes. All parties agree that if the tax assessor in the case sub ju-dice had received payments under this statute as advances against commissions for each of the first six months of 1970, his commission on non-voted school millage would, of necessity, have had to have been paid by the board of public instruction since such advances would have been made prior to the effective date of the statute. All advances to the assessor for commissions made during the last six months of the year would, of necessity, have been paid by the board of county commissioners. *298 The school board contends, and the circuit court agreed, that since the tax assessor in the case sub judice did not draw any monthly advances against commissions until the month of August 1970, then all commissions due him for that year must be paid by the board of county commissioners and not the school board. Such a ruling would permit each county tax assessor in the state, by the exercise of his own discretion and at his particular whim, to fix the financial responsibility of the school boards and the counties by merely electing whether to draw his commissions during each month of the first six months of the year, thereby requiring one-half of his annual commissions to be paid by the school board, or waiting and not drawing any commissions until the last half of the year, as a result of which all of his annual commissions would have to be paid by the board of county commissioners. We do not believe this to have been the intent of the Legislature or the purpose of the statute under consideration. To permit such a result would be contrary to logic or reason, and not in keeping with fair and equitable principles of government.
Since the Legislature elected to make the effective date of the act under consideration July 1, 1970, we construe it to have been the legislative intent that one-half of the tax assessors’ commissions for 1970 on non-voted school millage be paid by the county school board and the remaining one-half paid by the board of county commissioners. We so construe the act in the disposition of this case.
For the foregoing reasons the final judgment appealed from herein should be, and it is, reversed, and this cause is remanded with directions for further proceedings consistent with the views herein-above set forth.
Reversed and remanded with directions.
SPECTOR, C. J., and WIGGINTON, J., concur.